Howard BALDWIN, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 1179S332.

Supreme Court of Indiana.

Oct. 7, 1980.

Charles E. Johnson, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Stephen J. Cuthbert, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was charged by information in three counts with Count I, Felony Murder, Ind.Code § 35–42–1–1(2) (Burns 1979); Count II, Murder, Ind.Code § 35–42 ·1 1(1) (Burns 1979); and Count III, Armed Robbery, Ind.Code § 35–42–5–1 (Burns 1979). After trial by jury he was convicted upon all Counts. The court sentenced him to sixty (60) years imprisonment on Count I and thirty (30) years imprisonment on Count III, sentences to run concurrently.

This direct appeal presents the following issues:

(1) Whether the defendant was entitled to be discharged pursuant to Ind.R.Crim.P. 4(C).

(2) Whether or not the trial court erred in denying Defendant's suppression motion.

(3) Whether or not the evidence is sufficient to support the verdict.

(4) Whether or not the trial court erred in denying the defendant the answers to two questions asked on cross–examination.

\*   \*   \*   \*   \*   \*

## ISSUE I

Ind.R.Crim.P. 4(C) provides:

"No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar; provided, however, that in the last mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as under subdivision (A) of this rule. Any defendant so held shall, on motion, be discharged."

The relevant dates and occurrences are summarized as follows:

| | |
|---|---|
| November 13, 1977 | offenses committed |
| December 1, 1977 | defendant arrested |
| March 1, 1978 | three count indictment returned |
| March 15, 1978 | defendant files suggestion of incompetency |
| April 26, 1978 | defendant determined competent to stand trial |
| July 12, 1978 | indictment of March 1, 1978 dismissed |
| August 21, 1978 | defendant charged with murder only |
| February 24, 1979 | defendant arrested in Los Angeles |
| March 15, 1979 | Information filed—charges same as March 1, 1978 indictment |
| March 16, 1979 | defendant pleads not guilty; trial set for April 9, 1979 |
| April 9, 1979 | trial begins |
| April 12, 1979 | jury unable to reach verdict |
| May 2, 1979 | retrial begins, leading to convictions |

The defendant contends that on May 2, 1979 the trial court lacked jurisdiction to try him. He argues that this date is beyond the one year period prescribed in the rule.

In the instant case the one year period began to run on March 1, 1978. *State ex rel. Back v. Starke Circuit Court*, (1979) Ind., 390 N.E.2d 643, 644. *See State ex rel. Penn v. Marion County Criminal Court*, (1979) Ind., 389 N.E.2d 21, 22.

Under Rule 4(C) the forty–two day period from March 15, 1978 to April 26, 1978, in which the defendant's competence to stand trial was determined, is chargeable against the defendant. *See Flewallen v. State*, (1977) 267 Ind. 90, 93, 368 N.E.2d 239, 241. Therefore, the State had one year and forty–two days, or until April 12, 1979, to bring the defendant to trial.

The record plainly shows that the defendant's first trial began on April 9, 1979 and ended with a hung jury on April 12, 1979. "The purpose of these rules is to assure early trials and not to discharge defendants." *Utterback v. State*, (1974) 261 Ind. 685, 687, 310 N.E.2d 552, 553–54. The defendant makes no contention that the retrial date of May 2, 1979 was occasioned by the unreasonable delay of the State. On this record we hold the defendant was not entitled to be discharged under Rule 4(C).

## ISSUE II

The defendant challenges the validity of a warrant, which was obtained to search the premises where defendant lived. At trial all but one of the exhibits came into evidence without objection. The only objection raised was a claim that one exhibit had been tampered with. That objection is not asserted in this appeal.

When evidence is later offered at trial after the denial of a suppression motion, " * * * no error will be preserved unless there is an objection at that time." *Pointon v. State*, (1977) 267 Ind. 624, 627, 372 N.E.2d 1159, 1161. *See Stubblefield v. State*, (1979) Ind., 386 N.E.2d 665, 667. The error claimed in the denial of the suppression motion has not been preserved.

## ISSUE III

The defendant challenges the sufficiency of the evidence to support the verdict.

The facts and reasonable inferences to be drawn therefrom, most consistent with the verdict, disclosed that shortly before closing time on November 13, 1977, the defendant and Mark Hurt, wearing nylon stocking

masks, entered Pasquale's Pizza Parlor through the back door. They encountered an employee, Jack Givens, and pointed their guns at him. Hurt was carrying a shotgun, and the defendant had a handgun. They proceeded to the front of the store and ordered Givens, Rachel Bruner, another employee, and Joe Cangelosi, the owner, to lie face down on the floor. They asked Cangelosi where the money was, and he pointed to the office. Hurt told Bruner to get up and get the money, and Bruner, thereupon, went to the cash register to get the office key. Hurt then removed all the money from the cash register.

Bruner and Hurt then went inside the office, and Hurt repeatedly asked where the money was, but Bruner did not know. Hurt then rifled through the cabinets, desk, and shelves in the office, and at that point Bruner heard a shot.

While Hurt and Bruner were in the office, the defendant took Givens' wallet from his back pocket. He also took Cangelosi's wallet and asked if he had any more money. Cangelosi replied, "Yes," and started to reach into his pocket. At that point the defendant shot Cangelosi in the head.

When Bruner and Hurt came out of the office, the defendant had Bruner remove money from Cangelosi's pocket. The defendant and Hurt then placed Givens and Bruner in the walk–in freezer and made their escape by automobile.

At the trial Givens, Bruner and Hurt testified.

Givens testified that he was unable to identify either of the men after viewing a line–up. He had previously identified a photo of someone else as the person who shot Cangelosi, and he did not identify the defendant at trial.

Givens did identify a cloth checkered coat as the one the killer had worn. The coat had been taken from the trash burner in Defendant's backyard. He also testified that the defendant's nose had the same smashed–in quality as did the nose of the killer, and that the killer wore glasses.

Rachel Bruner testified that, just as she went into the freezer, she saw the defendant holding her purse. She also saw the defendant's piercing eyes at that point, because the nylon hose was no longer over his face. She stated that the killer was not wearing glasses.

Bruner identified the cloth checkered coat. She testified that her purse contained twenty dollars, make--up, and a prescription bottle of achromycin issued by Dr. Kingsbury and filled at the Clermont Pharmacy. She identified a strap, that was taken from the trash burner in defendant's backyard, as part of her purse. She identified a lipstick, which also came from the trash burner.

Cross -examination revealed a discrepancy between her trial testimony and her grand jury testimony, as to when she saw the defendant with her purse. In a prior statement to the police Bruner had said she might be able to identify the killer. At trial she did.

Bruner did not identify anyone at a line–up. She was shown a picture of the defendant and testified that she remembered that it was one she had been shown a year after the incident. At that time she did not identify the defendant from the picture.

She further testified that the eyeglasses which appeared on a composite sketch drawn from Givens' and Bruner's descriptions were Givens' idea. She noted that the defendant appeared to be younger in the photograph than he did in person and had a much lighter complexion in the photograph.

The State introduced the remains of an amber vial taken from the trash burner. An examination of the remains of the contents indicated that it was the prescription about which Bruner had testified.

The State introduced expert testimony that the bullet recovered from the victim's body was fired from a gun that had been found in Mark Hurt's residence.

Mark Hurt testified pursuant to a plea agreement. He confirmed Bruner's and Givens' account of the incident. He testified that he heard a shot while he and

Bruner were in the office. He stated he first saw a purse when the two returned to the defendant's house after the robbery.

Hurt admitted from the witness stand to having been involved in three other robberies, some with another accomplice, LeRoy Kilgore. In one instance Kilgore had shot someone. Originally he and Kilgore planned to rob Pasquale's. Hurt denied shooting Cangelosi.

Hurt admitted burglaries and car thefts and testified that under the plea agreement he was to testify at the defendant's trial and in the trial of another robbery charge and enter a guilty plea in the Pasquale robbery case. In return, he was to receive a twenty year sentence for the Pasquale robbery and other charges against him would be dropped. *See Newman v. State*, (1975) 263 Ind. 569, 573, 334 N.E.2d 684, 687.

Finally, the State offered the testimony of James Kittrell. Kittrell testified that, while they were in jail, he and the defendant discussed the robbery on several occasions. He stated that the defendant had admitted his involvement in the robbery and the shooting. Kittrell admitted that he was promised that the prosecutor, in consideration of his cooperation, would discuss his testifying with two judges, who might reduce his sentences. He also admitted to having several felony convictions.

The defendant offered four alibi witnesses.

"On appeal, we do not reweigh the evidence or the credibility of witnesses. If the evidence supportive of the verdict, and reasonable inferences to be drawn therefrom, would permit a reasonable trier of fact to infer the existence of each element of the crime beyond a reasonable doubt, the verdict will not be disturbed." *Dozier v. State*, (1976) 264 Ind. 329, 330 · 31, 343 N.E.2d 783, 784.

It is clear from this record, that substantial probative evidence was presented from which the jury could find, beyond a reasonable doubt, every element of felony murder and armed robbery, the charges for which the defendant was sentenced.[1]

## ISSUE IV

■ The defendant contends that the trial court erred in not allowing Mark Hurt to answer two questions asked on cross–examination.

After Hurt had admitted committing several other robberies, he was asked when he had committed one of them. The trial court sustained a relevancy objection.

The second question followed Hurt's testimony that he and Kilgore had committed robberies together and requested him to identify such robberies. Again, the trial court sustained a relevancy objection.

"The scope of cross-examination lies largely within the discretion of the court, and there can be a reversal only for gross error or abuse of discretion." *Gradison v. State*, (1973) 260 Ind. 688, 707, 300 N.E.2d 67, 80.

A careful examination of the record reveals that Defendant had an ample opportunity to cross examine Hurt. Further cross-examination appears unlikely to have produced additional information or inconsistencies reflecting adversely upon Hurt's credibility. *Stathes v. State*, (1975) 29 Md. App. 474, 489, 349 A.2d 254, 262, *cert. denied* (1976) 277 Md. 741, *appeal dismissed*, (1976) 429 U.S. 803, 97 S.Ct. 36, 50 L.Ed.2d 64. *See Inman v. State*, (1978) Ind., 383 N.E.2d 820, 823; *Sulie v. State*, (1978) Ind., 379 N.E.2d 455, 458. *See also Irons v. State*, (1979) Ind., 397 N.E.2d 603, 606. We find no abuse of discretion.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.

---

1. The State correctly points out in its brief that the murder and felony murder charges merged for purposes of sentencing. *Hudson v. State*, (1976) 265 Ind. 302, 310, 354 N.E.2d 164, 170. *See Thompson v. State*, (1972) 259 Ind. 587, 592, 290 N.E.2d 724, 727, *cert. denied*, (1973) 412 U.S. 943, 93 S.Ct. 2788, 37 L.Ed.2d ˙404. The trial court entered no judgment on the verdict for Count II, murder.