**James Dale STONE, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 22S00–8708–CR–724.

Supreme Court of Indiana.

Dec. 6, 1988.

George W. Gesenhues, Jr., Steven A. Gustafson, New Albany, for appellant.

Linley E. Pearson, Atty. Gen., Lisa Anne McCoy, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in a conviction of appellant of Attempted Murder, a Class A felony, for which he received a sentence of fifty (50) years; Rape, a Class A felony, for which he received a sentence of fifty (50) years; Criminal Deviate Conduct, a Class A felony, for which he received a sentence of fifty (50) years; and Criminal Conversion, a Class A misdemeanor, for which he received a sentence of one (1) year. The sentence for Attempted Murder was to run

consecutively to all other sentences which were to run concurrently one to the other.

The facts are: On August 9, 1985, the victim met a girl friend and travelled to a bar in New Albany, Indiana where they met the friend's boyfriend. While at the bar, they met appellant, who introduced himself by his true name and joined the group. They conversed and appellant danced with both women. Although they were drinking at the time, the victim testified that appellant showed no signs of being intoxicated.

After travelling to another bar, the women decided that it was late and they should be getting home. Because appellant did not have a ride, the victim decided to give him a ride in her friend's car which she borrowed for that purpose. When the victim and appellant arrived at his home, he asked her to come in to view some of his drawings. This was at approximately 2:00 a.m. There was a brief encounter with appellant's mother who just wanted to make sure he was the one who had entered the house. While in the house, appellant made a pass at the victim which she rebuffed.

After a few more minutes of conversation, appellant persuaded her to take him to the home of a friend. He packed a gym bag and the two left; as they drove, however, appellant requested that the victim pull over to the side of an isolated road where he produced a hunting knife and told her to take off her clothes. When she resisted, he told her he would kill her. He then dragged her from the car, held her down across the hood of the car, and raped her. When she cried and screamed, he slapped her and told her she could scream all she wanted—no one would hear her.

He next put her into the automobile and drove onto I-64 but refused to allow the victim to dress. He held his knife to the back of her neck and forced her to perform fellatio. He then stopped near a bridge past the Corydon exit where he threw the victim down and took her beneath the bridge onto a concrete abutment. He told her to spread her legs, and if she refused, he would run the knife up her. He again raped her, slapped her across the face, grabbed both sides of her head and began to pound her head against the concrete. He then turned her over and sodomized her. They got back into the car and drove to the next exit ramp where he exited then reentered the highway reversing his direction heading east toward New Albany. He allowed the victim to put on her jeans.

He stopped the car near a guard rail and told the victim to step over the guard rail. As she did so, he stabbed her in the back. At that point, she attempted to run from him. He stabbed her a second time in the back and twisted the knife. She was able to run across the highway, and appellant left the scene in the car. She obtained aid from a passing motorist who took her to the hospital where it was discovered that her lungs were punctured, and she was near death. However, the prompt action of her rescuer and the hospital staff saved her life.

Although appellant admitted being with the victim on the evening in question and travelling with her to his home, he denied that he left his home with her but claimed that after his mother had talked with them that the victim left alone and that he went to bed. Although he admitted that he "might have had intercourse with her," he denied that it was without her consent and denied that he was the one who had stabbed her.

Appellant contends the trial court erred when it denied his motion for discharge for failure to comply with his motion for speedy trial filed under Ind.R.Cr.P. 4(B). In overruling appellant's motion, Special Judge Wilson made the following finding: 1) the defendant filed a motion for speedy trial on February 13, 1986; 2) the defendant had escaped from the Crawford County jail and then resisted extradition, being extradited finally on March 7, 1986; and 3) there was congestion of the court calendar of Special Judge Wilson as well as the court calendar of the Crawford Circuit Court. The earliest available date was June 10, 1986.

The defendant next requested the cause be removed from the trial calendar for

June 10, 1986 and continued until after the trial of his connected case then pending in Floyd County. He further claimed that his new defense counsel had made his first appearance in the cause on June 3, 1986 and needed time to prepare for his trial and to file motions for discovery. This request for continuance was sustained.

When a defendant makes a motion under Ind.R.Cr.P. 4(B), he is required to maintain a position which is reasonably consistent with his speedy trial request. *Rutledge v. State* (1981), Ind., 426 N.E.2d 638. Failure to do so at any point constitutes an abandonment of the request and the motion ceases to have legal viability. *Utterback v. State* (1974), 261 Ind. 685, 310 N.E.2d 552. At the time the motion for speedy trial was filed, appellant was being held in jail in Kentucky following his escape in Indiana. His fighting of extradition and his request for continuance of the date eventually set by the trial court were inconsistent with his request for a speedy trial. Even if we assume for the sake of argument that such action should not defeat his motion, we hold the trial judge's finding of a congested calendar to be sufficient to justify the June 10 resetting.

The trial court did not err in denying appellant's motion for discharge.

Appellant contends the verdict of the jury is not supported by sufficient evidence. He claims this case represents an exception to the general rule that this Court will not weigh the evidence in that the testimony of the prosecuting witness was "inherently improbable, equivocal, and incredibly dubious uncorroborated testimony." He takes the position that the prosecuting witness did not make an allegation that she had been raped until some four or five hours after she had given an account of her assault to law enforcement officers. He also claims she gave inconsistent reports about the types of sexual abuse she had encountered at the hands of her assailant.

All of these matters were fully presented to the jury for their consideration. The jury could take into consideration that at the time appellant arrived at the hospital and was being questioned by law enforcement officers she was near death with two severe stab wounds in her back and two punctured lungs. It was for the jury to determine what effect such injuries might have had on the ability of the victim to recite the details of the attack. Under the circumstances, we can only review the evidence most favorable to the verdict and will not substitute our judgment for that of the jury. *Riggs v. State* (1987), Ind., 508 N.E.2d 1271.

Appellant contends the trial court erred in not dismissing the criminal deviate conduct count for failure to prove venue. He points out that the episode was alleged to have begun in Floyd County and that by the time the victim was picked up by her rescuer on the highway she was in Crawford County. He claims that in view of the victim's testimony that she was forced to commit fellatio while proceeding down the highway in the automobile, the State thus could not prove the venue of that occurrence.

Appellant misconstrues the law in Indiana on the requirement of establishing venue. In situations such as the case at bar, where a crime is commenced in one county and the perpetration continues into another county, the venue lies in either county for the prosecution of such a crime. *Floyd v. State* (1987), Ind., 503 N.E.2d 390. This is especially true in the case at bar when it was made clear that the attempted murder, that is, the stabbing of the victim, occurred in Crawford County, and it was appellant who requested that that case be transferred to Floyd County and tried with the other charges.

There is nothing whatever in this record to indicate that appellant was misled or harmed in any way by reason of the entire case being tried in Floyd County. The trial court did not err in denying appellant's motion to dismiss for failure to prove venue on the deviate conduct charge.

Appellant claims that the sentences totalling one hundred (100) years are excessive, unjustified, and manifestly unreasonable. To support this position, he cites the

case of *Fointno v. State* (1986), Ind., 487 N.E.2d 140. However, in the *Fointno* case, the majority, in large part, based its decision upon the fact that the defendant had not injured the woman or her child in the course of the attack.

In the case at bar, the jury was justified in finding that appellant had inflicted two severe wounds to the victim and that prior to inflicting such wounds, he had struck her on several occasions in addition to the various sexual abuses above described. The trial judge carefully went through both the aggravating and mitigating circumstances at the sentencing of appellant. He dealt with each charge separately and gave the proper reasons for the enhancement of the sentences and his reason for determining that the fifty (50) year sentence for attempted murder should run consecutive to the other sentences imposed. In view of the facts of this case, we see no reason to modify the sentence imposed by the trial court.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.