

# IN THE
# Indiana Supreme Court

Supreme Court Case No. 24S-CR-206



FILED

Dec 18 2024, 2:09 pm

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

## Stevie Bradley
*Appellant (Defendant below)*

—v—

## State of Indiana
*Appellee (Plaintiff below)*

---

Argued: September 5, 2024 | Decided: December 18, 2024

Appeal from the St. Joseph Superior Court
No. 71D02-2109-F1-20
The Honorable John M. Marnocha, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 22A-CR-2317

---

**Opinion by Justice Goff**

Chief Justice Rush and Justices Massa, Slaughter, and Molter concur.

**Goff, Justice.**

This case presents us with a straightforward question: whether a trial court's *sua sponte* order for a competency evaluation extinguishes, and thus resets, the Criminal Rule 4(B) period. We hold that it does not. So long as the defendant maintains a position reasonably consistent with his speedy-trial request, delays attributable to competency evaluations simply toll the applicable deadline. Thus, the trial court erred by resetting the Rule 4(B) deadline upon completion of the defendant's evaluation. But because the defendant failed to properly notify the court of its scheduling error, we hold that the defendant waived his right to discharge. We thus affirm the judgment of the trial court.

# Facts and Procedural History

Stevie Bradley and his girlfriend, A.R., had been dating for several months when Bradley accused her of infidelity. As the couple sat in his parked car late one night, Bradley demanded that A.R. call her alleged other "boyfriend." Tr. Vol. 2, p. 105. When no one answered that call, Bradley began yelling and punching A.R. in the face and head—his fist clenching the handle of a large "survival knife." *Id.* at 107. As Bradley drove the couple through rural St. Joseph County, the attacks continued, leaving A.R. with a bloody nose and a swollen eye. Eventually, Bradley parked the car along a wooded lane located on the property of Michele and Preston Johnson, Bradley's friends. Bradley then told A.R. to exit the car and, while armed with a machete, threatened to kill her and cut off her arm. Covered in blood and fearing for her life, A.R. fled into a nearby cornfield, eventually making her way to the Johnsons' home. But the nightmare was far from over.

Soon after the Johnsons called 911 but before police could arrive, Bradley emerged from the dark of night, holding the machete and a .22 caliber rifle. As Bradley dragged A.R. away, he threatened to kill her again, this time for involving his friends. After forcing her back into the car, Bradley drove the two of them a few miles down the road to an abandoned farm. At this point, Bradley told A.R. to exit the vehicle and

instructed her to run—"I dare you," he said—as he casually walked to the trunk of his car to collect ammunition and load his gun. *Id.* at 126–27. A.R. fled into a field but stopped moments later, paralyzed by fear from the crack of a gunshot. Bradley then approached A.R. and, as she turned to face him, smashed her in the mouth with the butt of his gun. As she staggered into the woods, bleeding profusely and in excruciating pain, A.R. flinched at the sound of several more gunshots. Remarkably, though, she escaped to a nearby road where two good Samaritans stopped to offer their help.

The State charged Bradley with several felony offenses: attempted murder, strangulation, domestic battery resulting in serious bodily injury, battery by means of a deadly weapon, intimidation, and aggravated battery. The following is a timeline of subsequent events relevant to Bradley's speedy-trial claim.

- September 16, 2021: Initial hearing at which Bradley, *pro se*, orally moves for an early trial. The magistrate responds by directing Bradley to file this motion in writing and, while setting bond, orders him to remain in jail.

- September 28, 2021: Second post-arrest hearing at which the judge grants Bradley's motion for early trial and sets trial for **December 6, 2021** (one day before the seventy-day window would have expired absent delays).

- November 22–23, 2021: Bradley, by counsel, moves to withdraw his early trial request and to continue trial, after which he elects to proceed *pro* se, so the court confirms the December 6 trial date and holds that the "Motion for Speedy Trial stands." App. Vol. 2, pp. 51–53, 59; Supp. Tr. Vol. 2, p. 5.

- November 29, 2021**:** Sixty-two days after granting the speedy-trial motion, the trial court *sua sponte* orders a competency evaluation for Bradley and vacates the December 6 trial date.

- January 31, 2022: With the evaluation pending, Bradley moves to dismiss the charges against him on grounds that the speedy-trial period has expired.

- March 15, 2022: Bradley is deemed competent to stand trial. The trial court, in turn, treats his original speedy-trial motion as a "continuing motion" and resets trial for May 4, 2022. Bradley again objects to that date as falling outside the speedy-trial period, but the court denies his motion for discharge. Second Supp. Tr. Vol. 2, pp. 4–7.

- April 4 and 29, 2022: Bradley files additional motions for discharge.

- May 4 and 10, 2022: Bradley moves for continuance and requests counsel. The court obliges but finds the delay attributable to him and resets trial for July 18, 2022.

- June 16, 2022: Bradley, by counsel, again moves for discharge, which the court denies about a month later.

- July 5, 2022: The court resets trial for August 8, 2022, due to change in appointed counsel.

- August 8, 2022: Before trial begins, Bradley again moves for discharge, which the court again denies.

After the court denied Bradley's final motion for discharge, the case proceeded to a three-day jury trial, culminating in guilty verdicts on all charges except strangulation. The trial court entered judgment of conviction and sentenced him to an aggregate term of forty years.

In a precedential opinion, the Court of Appeals vacated Bradley's convictions, concluding that, absent record evidence showing that trial could not be scheduled until May 4, 2022—whether due to delay caused by Bradley, court congestion, or emergency—that trial date fell outside the seventy-day window. *Bradley v. State*, 223 N.E.3d 701, 706 (Ind. Ct. App. 2023). When the trial was set for that date, the panel explained, the court acted under the mistaken belief (1) that Bradley had to file a new written motion after he was deemed competent and (2) that the seventy-day period was reset rather than merely tolled by the competency evaluation. *Id.* What's more, the panel found "nothing in the record that adequately

describes court congestion or emergency so as to justify scheduling Bradley's trial after March 23, 2022." *Id.*

On rehearing, a majority of the panel considered and rejected (waiver notwithstanding) the State's novel argument that the competency proceedings extinguished—rather than tolled—Bradley's speedy-trial request. *Bradley v. State*, 227 N.E.3d 974, 976, 977 (Ind. Ct. App. 2024). In dissent, Judge Brown concluded that "Bradley's actions leading to questions about his competency were inconsistent with his motion for an early trial and that the resulting delay was chargeable to him." *Id.* at 978.

The State petitioned for transfer, which we granted, thus vacating the Court of Appeals' decision. *See* Ind. Appellate Rule 58(A).

## Standard of Review

In *Austin v. State*, we clarified the proper standard for appellate review of trial court decisions on Rule 4 motions. 997 N.E.2d 1027, 1038–40 (Ind. 2013). When the issue involves "a question of law applied to undisputed facts, the standard of review—like for all questions of law—is de novo," with the "ultimate reasonableness of the trial court's findings" dependent on "the facts and circumstances of the particular case." *Id.* at 1039. When the trial court makes factual findings (of congestion or emergency to justify a deadline extension), appellate courts show "reasonable deference" to those findings and reverse only for "clear error." *Id.* at 1040.

## Discussion and Decision

Our decision proceeds in two parts: We first consider whether the trial court erred by resetting the Criminal Rule 4(B) deadline upon completion of Bradley's competency evaluation. In holding that it did, we reject the State's theory that an evaluation order extinguishes, rather than tolls, the applicable Rule 4 period. We then consider whether Bradley's objection to continuing trial properly notified the trial court of its specific scheduling error. In concluding that it did not, we hold that Bradley waived his right to discharge.

# I. The trial court erred by resetting the Criminal Rule 4(B) deadline upon completion of the competency evaluation.

As noted above, the trial court originally set Bradley's early trial for December 6, 2021. On November 29, 2021 (sixty-two days after the trial court granted Bradley's early trial motion), the trial court vacated the December 6 trial date and *sua sponte* ordered a competency evaluation of Bradley. When Bradley was deemed competent on March 15, 2022, the State had eight days to bring Bradley to trial (March 23)—absent a delay by Bradley or a finding of congestion that would have prevented such a quick turnaround. Over Bradley's objection, the trial court nevertheless reset trial for May 4, 2022. In settling on this date, the court treated Bradley's "original motion for a speedy trial as a continuing motion." Second Supp. Tr. Vol. 2, p. 4. Based on this language, the Court of Appeals concluded that the trial court "calculated the new end date for Bradley's early trial period as 70 days after March 15, 2022, as if Bradley had made a subsequent early trial motion." *Bradley*, 223 N.E.3d at 705; *see Finnegan v. State*, 201 N.E.3d 1186, 1192–93 (Ind. Ct. App. 2023) (second speedy-trial motion constitutes abandonment of previous speedy-trial motions filed by defendant). The record appears to support this conclusion. When ruling on one of Bradley's subsequent motions for discharge, the court stated that, "on March 15 of 2022, the trial was set within—set for May 4. **That trial was set within 70 days. I did not require Mr. Bradley to file yet a new written motion for an early trial, which I think would be required**." Supp. Tr. Vol. 2, pp. 5–6 (emphases added).

The State clearly agrees with the panel's reading of the trial court record—*i.e.*, that the trial court calculated the new end date for Bradley's speedy-trial period as if he had made a subsequent early trial motion (thus restarting the seventy-day clock on March 15, 2022). Accordingly, the State asks this Court to "hold that when a defendant's conduct prompts a competency evaluation, a prior Rule 4(B) request for early trial is extinguished and must be renewed, if still desired, after competency proceedings are complete." Pet. to Trans. at 5.

For the reasons below, we reject the State's theory that a trial court's *sua sponte* order for a competency evaluation extinguishes the Criminal Rule 4(B) period. So long as the defendant maintains a position reasonably consistent with his speedy-trial request, delays attributable to competency evaluations—whether requested by a party or ordered by the court on its own motion—simply toll the applicable deadline.

### A. The State's extinguishment theory conflicts with the history and plain language of Criminal Rule 4, well-settled case law, and the text of the competency statute.

Upon motion by an incarcerated defendant for an early trial, Criminal Rule 4(B) requires the defendant's discharge "if not brought to trial within seventy (70) calendar days from the date of such motion." Ind. Crim. Rule 4(B)(1) (repealed and replaced).[1] An exception to this seventy-day window applies when the defendant moves for a continuance or when "the delay is otherwise caused by his act." *Id.* According to the State, any such delay extinguishes rather than tolls the seventy-day window. Pet. to Trans. at 10–11. And "[d]elays due to competency proceedings should be treated the same no matter who alerts the trial court to concerns about the defendant's conduct." *Id.* at 14.

We disagree.

To begin with, the State's theory conflicts with the history and plain language of Criminal Rule 4. Before 1974, Criminal Rule 4 (and its predecessor rule) contained no express tolling provision. *State ex rel. Young v. Madison Cir. Ct.*, 262 Ind. 130, 133, 312 N.E.2d 74, 76 (1974). So, the time limitations, as interpreted by Indiana courts, would "**run anew**" for any delay chargeable to the defendant. *State v. Grow*, 255 Ind. 183, 186, 263 N.E.2d 277, 278 (1970) (emphasis added); *see also Summerlin v. State*, 256 Ind. 652, 666, 271 N.E.2d 411, 418 (1971) (defendant's delays that

---

[1] The amended Criminal Rule 4 went into effect on January 1, 2024, **after** Bradley's convictions.

"obstruct the speedy trial process should cause the time to start anew"). And this resetting-of-the-clock theory applied to delays triggered by virtually any motion or action initiated by the defendant. *See, e.g., State v. Mabrey*, 199 Ind. 276, 278–79, 157 N.E. 97, 98 (1927) (motion for change of venue); *Weer v. State*, 219 Ind. 217, 225, 36 N.E.2d 787, 789 (1941) (motion for change of judge); *Morrow v. State*, 245 Ind. 242, 244, 196 N.E.2d 408, 409 (1964) (motion for continuance); *State v. Hawley*, 256 Ind. 244, 247, 268 N.E.2d 80, 83 (1971) (motion for severance); *State ex rel. Walker v. Ratliff*, 253 Ind. 495, 497–98, 255 N.E.2d 223, 224 (1970) (appeals); *Summerlin*, 256 Ind. at 665, 271 N.E.2d at 418 (requests for new counsel).

This interpretation of Criminal Rule 4, by threatening the forfeiture of time accrued toward the applicable deadline, often forced the defendant to choose between a speedy trial and a fair one. *See Easton v. State*, 258 Ind. 204, 206, 280 N.E.2d 307, 308 (1972) (noting defendant's argument "that to charge him with the delay requires him to elect between his constitutional guarant[e]es of a speedy trial and a trial by an unbiased court"); Note, *Speedy Trial Protection for Criminal Defendants Under Indiana's Amended Criminal Rule 4*, 8 Val. U. L. Rev. 683, 697–99 (1974) (discussing the "chilling effect" created by this interpretation of the rule). The adoption of Criminal Rule 4(F) in 1974 alleviated this problem. That rule, applicable when the defendant moves for continuance or otherwise causes delay, extends "**any time limitation**" under Criminal Rule 4—including the seventy-day window under Criminal Rule 4(B)—only "by the amount of the resulting period of such delay caused thereby." Crim. R. 4(F) (emphasis added).[2] With the advent of Criminal Rule 4(F), then, "defendant initiated delay no longer triggers the commencement of an entire new period." *Young*, 262 Ind. at 133, 312 N.E.2d at 76.[3] By arguing

---

[2] Nowhere in its arguments—whether in its original appellate briefing, its briefing on rehearing, or its briefing on transfer—does the State even reference Criminal Rule 4(F), let alone the directive that "any time limitation" under Criminal Rule 4 is "**extended** by the amount of the resulting period of such delay caused" by the defendant's acts. (emphasis added).

[3] The *Young* Court declined to apply Criminal Rule 4(F), concluding that it had no "retroactive application" to the defendant in that case. 262 Ind. at 131, 312 N.E.2d at 75.

that a trial court's order for a competency evaluation extinguishes the speedy-trial period, the State essentially advocates for a return to the pre-1974 Rule under which, absent an express tolling provision, the time limitations would "run anew" for delay prompted by a competency evaluation. *Grow*, 255 Ind. at 186, 263 N.E.2d at 278.

Beyond the history and plain language of Criminal Rule 4, the precedent on which the State relies undermines its theory that a "delay to determine competency should extinguish an early trial request." *See* Pet. to Trans. at 14–15 (citing *Curtis v. State*, 948 N.E.2d 1143, 1150 (Ind. 2011)). In fact, the relevant case law aligns with Criminal Rule 4(F)'s directive that delays caused by the defendant **toll or extend** the applicable speedy-trial window. In *Curtis*, for example, the defendant requested a competency evaluation but then rescinded his request about a month later, prompting the trial court to cancel the evaluation it had ordered. 948 N.E.2d at 1149. In analyzing the defendant's speedy-trial claim, this Court noted the long-held rule that "delays attributable to a defendant's claim of incompetency are charged against the defendant for Rule 4(C) purposes." *Id.* at 1150 (citing *Baldwin v. State*, 274 Ind. 269, 271, 411 N.E.2d 605, 606 (1980)). The Court, however, did **not** find that the delay extinguished the defendant's speedy-trial request; rather, the delay simply tolled the applicable time limit—the "trial court's cancellation of the competency evaluation" having resumed or "**restarted** the Rule 4(C) period." *Id.* (emphasis added). And the Court went on to cite Criminal Rule 4(F) for the proposition that "delays caused by the defendant technically **extend** the Rule 4(C) one-year time period." *Id.* (emphasis added).

Still, the State attempts to distinguish *Curtis* because that case, which involved Criminal Rule 4(C), "said nothing about Rule 4(B), which differs from other parts of Criminal Rule 4 due to its requirement that the defendant affirmatively request an early trial." Reply in Supp. of Trans. at 6. But, as noted above, under the express dictate of Criminal Rule 4(F), the tolling or extension of time resulting from the delay applies to "**any time limitation** contained" in Criminal Rule 4, whether under subpart (A), (B), or (C) (emphasis added).

Finally, the State's proposed rule stands in clear tension with the text of the competency statute itself. Under that statute, a trial court must order a competency determination when it has "reasonable grounds for believing that the defendant lacks the ability to understand the proceedings and assist in the preparation of a defense." Ind. Code § 35-36-3-1(a). When the defendant is found competent following an evaluation, he must be returned to trial and "the court shall hold the trial **as if no delay or postponement had occurred**." I.C. § 35-36-3-2 (emphasis added). "In other words," one commentator has observed, "the time limits under **any** applicable speedy trial provisions **are tolled** while a defendant is mentally incompetent." William Andrew Kerr, 16B Ind. Practice, Criminal Procedure: Trial § 18.5, at 25 (1998) (emphases added). And with no limitations in the statute on **who** may request the competency evaluation, it would "appear to cover **any delays** that are **caused by the trial court acting** *sua sponte* or at the suggestion of a person other than the defendant." *Id.* (emphases added).

## B. Though there may be cases in which a defendant's evaluation-inducing conduct extinguishes a speedy-trial request, we find no such circumstances here.

While delays attributable to the defendant typically toll the speedy-trial window, Indiana courts have found that a defendant may, by his conduct, abandon his speedy-trial request under certain circumstances. When a defendant moves for an early trial under Criminal Rule 4(B), "he is required to maintain a position which is reasonably consistent with his speedy trial request." *Stone v. State*, 531 N.E.2d 191, 194 (Ind. 1988). And his "[f]ailure to do so at any point constitutes an abandonment of the request and the motion ceases to have legal viability." *Id.* In *Stone*, for example, we held that the defendant's "fighting of extradition and his request for continuance of the date eventually set by the trial court were inconsistent with his request for a speedy trial." *Id.* In another case, *Payne v. State*, the Court of Appeals ruled that the defendant's acceptance of a guilty plea "extinguished" his speedy-trial request, requiring him to file a new 4(B) motion following the withdrawal of his plea. 658 N.E.2d 635, 641

(Ind. Ct. App. 1995). And in *Talbott v. State*, the Court of Appeals held that the defendant's act of "repeatedly" seeking "to change his attorney close to the time of trial" constituted one of several "litigation tactics" deemed "inconsistent with" his request for a speedy trial and thus "necessitated vacation of his original trial date." 204 N.E.3d 288, 299, 300–01 (Ind. Ct. App. 2023).

The State likens these cases—*Payne* and *Talbott* in particular—to the circumstances here, arguing that a defendant's conduct prompting a competency determination "is inconsistent with his desire for an early trial." Pet. to Trans. at 9–10, 13. While admitting that incompetency "is not a matter of fault or intentional design by the defendant," the State insists that it's "no less true that the necessary consequence of the defendant's actions, which are outside the control of the court and the State, make it impossible to comply with his prior request for an early trial." *Id.* at 14.

Again, we disagree.

First, we do not believe that a competency determination makes it "impossible to comply with [the defendant's] prior request for an early trial." *See id.* As noted above, when a defendant is found competent following an evaluation, he must be returned to trial "as if no delay or postponement had occurred." I.C. § 35-36-3-2. In other words, the proceedings and time limits are tolled. What's more, as discussed below, the State had other options under Criminal Rule 4 to extend the applicable deadline.

Second, a defendant's affirmative conduct to purposefully delay a trial (or which otherwise stands at odds with an early trial request) is **not** the same as a defendant's potential inability to understand the proceedings. *Cf. Talbott*, 204 N.E.3d at 300–01 (citing the defendant's affirmative "litigation tactics"—including his express request "not to set a trial date," his repeated requests for new counsel just before trial, his pursuance of an interlocutory appeal, and the "dozens of lengthy, repetitive motions" he filed—as inconsistent with his request for early trial); *Payne*, 658 N.E.2d at 641 (stressing that, by affirmatively accepting a guilty plea, a defendant "waive[s] his right to trial, which included his right to an early trial").

To be sure, there may be cases in which a defendant's evaluation-inducing conduct stands inconsistent with his speedy-trial request. But the record here reveals no such circumstances. The trial court cited the following reasons for ordering the competency evaluation and vacating the original trial date: (1) Bradley's "in-court and remote conduct," (2) a jail e-mail indicating his "psychiatric history" and "some issues with respect to medication," and (3) his purported refusal "to be transported" for a hearing. Supp. Tr. Vol. 2, pp. 5, 7. The court declined to elaborate on what "in-court and remote conduct" it may have been referring to, giving us no basis for concluding that Bradley impeded the proceedings. The court likewise offered no details on Bradley's "psychiatric history" or the "issues" he was having with his medication, again giving us no reason to suspect that he acted inconsistent with his speedy-trial request.

Bradley's purported refusal "to be transported" for a hearing **could be** interpreted as inconsistent with his request for a speedy trial, at least if his refusal interrupted or impeded the proceedings in some way. *Cf. Stone*, 531 N.E.2d at 194 (citing defendant's "fighting of extradition" as a reason for finding that he had abandoned his speedy-trial request). But the trial court made no suggestion that his refusal triggered such an impediment. And, in any event, a defendant has a right **not** to be present at trial or other "critical stage of the proceedings," so long as he exercises that right knowingly and voluntarily. *Carter v. State*, 501 N.E.2d 439, 440 (Ind. 1986) (quoting *Martin v. State*, 457 N.E.2d 1085, 1086 (Ind. 1984)).

In short, although there may be circumstances where a defendant's evaluation-inducing conduct extinguishes a speedy-trial request, we find no such circumstances here.

### C. The State could have used other Criminal Rule 4 means to extend the deadline, but it failed to do so.

Finally, the State urges us to adopt its extinguishment theory as a matter of sound policy. According to the State, the "tolling rule causes practical problems," especially here. Pet. to Trans. at 17. "Requiring all parties to hold a trial within eight days of the competency determination was unworkable," the State insists, depriving both parties of sufficient

time to assemble potential jurors, subpoena witnesses, and otherwise prepare. *Id.* By contrast, the State submits, "[e]xtinguishing rather than tolling a prior early trial request" due to intervening competency proceedings "provides a simple and efficient rule that protects all of defendant's rights." *Id.* at 16.

We disagree.

Whatever the practical consequences of tolling, the State had **several options** at its disposal to extend the Criminal Rule 4 deadline. For example, if a defendant causes any delay during the last thirty days of the speedy-trial period, "the State may petition the trial court for an extension of such period for an additional thirty (30) days." Crim. R. 4(F). As noted above, Indiana courts have long held that a competency determination is a delay in proceedings attributable to the defendant. And it apparently matters not that the defendant himself requested the evaluation, *see* I.C. § 35-36-3-2 (tolling the proceedings during defendant's competency evaluation regardless of who requested the evaluation), or caused a delay in the evaluation, *see, e.g.*, *O'Neill v. State*, 597 N.E.2d 379, 384 (Ind. Ct. App. 1992) (charging defendant with delay in psychiatric examination caused by "secretarial error"). Here, the competency determination concluded eight days before trial, giving the State more than sufficient time to request a thirty-day extension.

Criminal Rule 4(D), in turn, permits a court to continue the case for up to ninety days if the State has made reasonable, albeit unsuccessful, efforts to obtain evidence and there is just cause to believe the State can secure that evidence within the allotted time. Crim. R. 4(D). If, as the State contends, holding trial within eight days of the competency determination deprived the parties of sufficient time to subpoena witnesses, *see* Pet. to Trans. at 17, the State could have invoked Rule 4(D) for an extension of time to secure those witness.

Criminal Rule 4(B) presented the State with yet another possible option. That rule permits an extension of time when "congestion of the court calendar" leaves insufficient time to try the defendant. Crim. R. 4(B)(1). In those circumstances, the prosecutor must either move for a continuance no later than ten days before trial or, if less than ten days, show that the

delay was not his or her fault. *Id.*; Crim. R. 4(A). Though only eight days remained in the speedy-trial period when Bradley was deemed competent, the State very well could have argued that the delay—prompted by the trial court's *sua sponte* evaluation order —was no fault of the prosecutor.

The State failed to exercise **any** of these options. And we decline to adopt a novel interpretation of Criminal Rule 4—one grounded in **no** supporting authority—to account for the State's oversight.

* * * *

For the reasons above, we hold that the trial court erred by resetting the Rule 4(B) deadline upon completion of Bradley's competency evaluation. But this conclusion doesn't end our inquiry. Though the competency evaluation should have tolled the applicable deadline, there may be other viable grounds on which to affirm the trial court's ruling.[4]

## II. Given his failure to properly notify the trial court of its specific scheduling error, Bradley waived his right to discharge.

For a party to preserve a claim for review, we generally require that party to object to the trial court's ruling and to state the reasons for that objection. *Durden v. State*, 99 N.E.3d 645, 651 (Ind. 2018). This process "gives the court an opportunity to cure the alleged error, which, in turn, can result in enormous savings in time, effort and expense to the parties

---

[4] There's some suggestion in the record that the court considered its calendar too congested to hold trial within eight days of the competency determination. *See* Second Supp. Tr. Vol. 2, p. 4 (finding that the court "d[id]n't have three days that week" to hold trial). But given the lack of clarity in the record, and given the State's abandonment of the issue, *see* Pet. to Trans. at 17, we decline to affirm the trial court on grounds of congestion. Still, it's worth re-emphasizing that a trial court, though subject to review for clear error, can typically meet its low burden of showing congestion by offering a simple factual basis to support its finding—*e.g.*, by noting the case and cause number requiring priority treatment. *Grimes v. State*, 235 N.E.3d 1224, 1237 (Ind. 2024) (Goff, J., dissenting).

and the court, including avoiding an appeal and retrial." *Id.* (internal citation and quotation marks omitted); *see also McDowell v. State*, 885 N.E.2d 1260, 1262 (Ind. 2008) (citing similar reasons for requiring specificity in objections to a jury instruction).

Because the right to a speedy trial is "not a self-executing right," a defendant with a Criminal Rule 4 claim must likewise take affirmative action to avoid waiving that claim for review. *Young v. State*, 765 N.E.2d 673, 679 (Ind. Ct. App. 2002). If, before the applicable deadline expires, a court sets the trial date beyond that deadline, the defendant—when he or she "is or should be aware" of the scheduling error—must object "at the earliest opportunity" so the court can cure its error by rescheduling trial "within the proper period." *Little v. State*, 275 Ind. 78, 81, 415 N.E.2d 44, 46 (1981). In the absence of an objection to a scheduling error before the time limit expires, we deem the defendant to have "acquiesced" to the date and to have waived his right to discharge when the Rule 4 deadline passes. *Id.* This requirement adheres to Rule 4's central purpose—to ensure "a timely trial, not to create a mechanism to avoid trial." *Brown v. State*, 725 N.E.2d 823, 825 (Ind. 2000).

Though this Court has never required a defendant to specify the reasons for his or her Rule 4 objection, our Court of Appeals has. *See Todisco v. State*, 965 N.E.2d 753, 756 (Ind. Ct. App. 2012) (holding that defendant waived his right to a speedy trial where he filed a "general objection" to the setting of trial beyond the Rule 4 deadline "without specifying any basis" for that objection), *trans. denied*. And we agree that, to "properly preserve an issue for appellate review," even in the context of a Rule 4 claim, a defendant "must state with reasonable specificity the grounds for his objection while before the trial court." *Id.* (citation and quotation marks omitted). In other words, we do not believe that a bare objection to continuing a trial necessarily suffices to preserve the right to discharge. When a trial court errs in setting a trial date, it's the defendant's "obligation to call it to the court's attention in time to permit a correction." *Utterback v. State*, 261 Ind. 685, 687, 310 N.E.2d 552, 554 (1974). Once the defendant moves for discharge, the trial and appellate courts should be able to say with confidence that the trial court had notice of the error it was committing. Requiring the defendant to specify the nature of the error

**only** at the motion-for-discharge stage (*i.e.*, after the deadline passes) deprives the court of an opportunity to cure the alleged error.

Here, on March 15, 2022, Bradley objected to the trial court's continuance of his trial date beyond the Rule 4 period. The substance of his objection was that the seventy-day clock began running on September 16, 2021 (the date of his first post-arrest hearing). Based on that date, the deadline would have passed on November 25—four days before the trial court referred Bradley for a competency evaluation. Bradley repeated this argument in his written motions. But the magistrate to whom Bradley addressed his first oral request for early trial rejected it, and properly so. *See McGowan v. State*, 599 N.E.2d 589, 591 (Ind. 1992) (holding that a trial court may require an early trial motion to be made in writing).[5] The clock didn't start ticking until twelve days later—on September 28, 2021—when the trial court accepted Bradley's second request for an early trial. *See* Second Supp. Tr. Vol. 2, p. 5. Bradley did not argue, as trial counsel argued three months later and as Bradley now argues on appeal, that the trial court set trial beyond the Rule 4 deadline. He did not, in other words, demand a trial within the eight days left on the clock. Thus, Bradley failed to put the trial court on notice of the specific error it was committing, namely restarting the seventy-day clock instead of tolling it.

Under these circumstances, we cannot say that Bradley made a timely objection with sufficient specificity to alert the trial court to its error and to secure his right to a speedy trial. To hold otherwise would permit Criminal Rule 4(B) to become a device for making surprise attacks on convictions after the fact. We therefore hold that Bradley waived his right to discharge.

---

[5] Even if Bradly's first oral motion for an early trial were valid, he effectively abandoned that motion by making a second motion. *See Finnegan*, 201 N.E.3d at 1192–93 (defendant's filing of second early trial motion "constitutes an abandonment of previous motions for early trial filed by that defendant") (quoting *Minneman v. State*, 441 N.E.2d 673, 677 (Ind. 1982)).

# Conclusion

For the reasons above, we hold that the trial court erred by resetting the Rule 4(B) deadline upon completion of Bradley's competency evaluation. But because Bradley failed to properly notify the court of its scheduling error, we hold that he waived his right to discharge.

Affirmed.

Rush, C.J., and Massa, Slaughter, and Molter, JJ., concur.

ATTORNEY FOR APPELLANT
Thomas P. Keller
South Bend, Indiana

ATTORNEYS FOR APPELLEE
Theodore E. Rokita
Attorney General of Indiana

Steven J. Hosler
Andrew A. Kobe
Angela Sanchez
Office of the Indiana Attorney General
Indianapolis, Indiana